*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re HERRICK/WOZNIAK, Minors.

UNPUBLISHED
October 10, 2019

No. 347635
Ingham Circuit Court
Family Division
LC Nos. 17-001283-NA;
　　　　　17-001284-NA;
　　　　　17-001285-NA;
　　　　　17-001286-NA;
　　　　　17-001287-NA

In re WOZNIAK, Minors.

No. 347661
Ingham Circuit Court
Family Division
LC Nos. 17-001285-NA;
　　　　　17-001286-NA;
　　　　　17-001287-NA

Before: MARKEY, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondents appeal by right the trial court's order terminating their parental rights to their minor children. In Docket No. 347635, respondent-mother appeals the trial court's termination of her parental rights to DJH, ALH, JLW, IW, and AMW under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). In Docket No. 347661, respondent-father appeals the trial court's termination of his

---

[1] See *In re Herrick/Wozniak Minors*, unpublished order of the Court of Appeals, entered February 28, 2019 (Docket Nos. 347635; 347661).

parental rights to JLW, IW, and AMW also under MCL 712A.19b(3)(c)(*i*), (g), and (j).[2]  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

In September 2017, the Department of Health and Human Services (DHHS or petitioner) filed a petition requesting the removal of all five children from respondent-father's home. Respondent-mother was identified as the mother of all five children, and respondent-father was identified as the father of JLW, IW, and AMW.

The petition stated that all five children were in respondent-father's care and custody when respondent-father, having been on a two-day "meth binge," assaulted and threatened his live-in partner with a knife while the children were in the home, resulting in his arrest and incarceration.  The petition also stated that both respondents had a history of substantiated Children's Protective Services (CPS) cases for improper supervision, physical neglect, and physical abuse.  At the time the petition was filed, respondent-mother was homeless and unable to provide care and custody for the children because of her lack of employment, lack of housing, and refusal to participate in drug screens and to cooperate with CPS.  The trial court authorized the petition and removed the children, placing ALH with her paternal grandmother and placing the remaining children in separate non-relative placements.[3]

At the adjudication bench trial, respondent-father entered a plea admitting to the domestic violence incident that brought the children into care and to his substance-abuse issues. Respondent-mother did not appear for the trial but was represented by counsel.  Respondent-mother was adjudicated, and the trial court concluded that her history of CPS cases and substance-abuse issues was sufficient to warrant taking jurisdiction over the children.  The trial court took jurisdiction over the children and ordered DHHS to develop service plans for respondents to address issues of substance abuse, domestic violence, and other barriers to reunification.

Over the course of these proceedings, respondent-mother was arrested and pleaded guilty to the delivery and manufacture of methamphetamine, and was incarcerated.  She participated in some services while in jail, including attending Narcotics Anonymous (NA) meetings, domestic violence classes, and anger management classes.  Respondent-mother was diverted from jail to an inpatient substance-abuse treatment program, but was discharged from the program for behavioral issues and non-compliance, and was returned to jail.  She missed 24 random drug

---

[2] The same order also terminated the parental rights of DJH's and ALH's respective fathers, who were also respondents in the proceedings below; however, neither is a party to this appeal. Accordingly, the term "respondent-father" as used in this opinion refers only to the appellant in Docket No. 347661.  Further, we use the term "respondents" to refer jointly to respondent-mother and respondent-father only, not to refer to all respondents in the proceedings below.

[3] JLW, IW, and AMW were placed in non-relative foster homes, while DJH was placed in a residential treatment facility due to significant emotional and behavioral issues.

screens during the course of the proceedings, and tested positive for controlled substances, including methamphetamine, four times. Respondent-mother completed a psychological evaluation but failed to follow through with referrals for counseling. Respondent-mother did not attend the majority of her scheduled parenting-time visits during the time she was not incarcerated, and failed to complete parenting classes. At the time of the termination hearing, respondent-mother had completed only 30 days of inpatient substance-abuse treatment, still lacked employment and housing, had not participated in parenting time in over five months, and had not complied with many of the requirements of her case service plan.

Respondent-father was also incarcerated on multiple occasions during the proceedings below. Despite efforts by DHHS workers to schedule several appointments for respondent-father's court-ordered services, he consistently failed to attend them or to keep in contact with his caseworker. Respondent-father missed over 100 scheduled drug screens and tested positive for methamphetamines or marijuana several times. He never completed a substance abuse evaluation or psychological evaluation. He had missed 19 of his scheduled parenting time visits, and had failed to complete parenting classes. Respondent-father had no contact with DHHS after May 2018.

Both respondents failed to obtain suitable housing for the children despite referrals for various services. Neither respondent ever reported any employment.

In November 2018, DHHS filed a supplemental petition seeking termination of respondents' parental rights, noting respondents' incarceration, substance abuse, and lack of progress on their case service plans. In December 2018, the children's lawyer-guardian ad litem (LGAL) moved the trial court to suspend respondents' parenting time, which the trial court granted. In January 2019, after a termination hearing, the trial court terminated respondents' parental rights.

These appeals followed.

## II. STATUTORY GROUNDS

## A. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error the trial court's factual findings and findings that a ground for termination has been established. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

We review for clear error whether petitioner made reasonable efforts to preserve and reunify the family. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

B. ANALYSIS

The trial court terminated each respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide in relevant part:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

If we conclude that the trial court did not clearly err by finding one statutory ground for termination of a respondent's parental rights, we do not need to address the additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

1. RESPONDENT-MOTHER (DOCKET NO. 347635)

Respondent-mother argues that the trial court erred by determining that a statutory grounds for termination of her parental rights was proven by clear and convincing evidence. We disagree.

The trial court did not clearly err by finding that termination of respondent-mother's parental rights to the minor children was proper under MCL 712A.19b(3)(c)(*i*). Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the parent] had not accomplished any meaningful change in the conditions" that led to the court taking jurisdiction over the minor, *In re Williams*, 286 Mich App 253, 272; 779

NW2d 286 (2009), and "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*).

The initial dispositional hearing following respondent-mother's adjudication was held on November 22, 2017, and the initial dispositional order was entered on the same day. The termination hearing was held on January 9, 2019, thereby satisfying the requirement that 182 or more days elapsed since the issuance of the initial dispositional order. MCL 712A.19b(3)(c).

Respondent-mother's barriers to reunification were identified in her case service plan as "Substance Abuse," "Housing," "Child Characteristics," "Emotional Stability Behavior," "Parenting Skills," "Social Support System," "Communication/Interpersonal Skills," "Resource Availability/Management," and "Employment." The plan required respondent-mother to participate in random drug testing twice a week, to participate in a substance-abuse evaluation and follow all recommendations, and to inform the caseworker of any medication changes. Additionally, respondent-mother was required to attend NA or Alcoholic Anonymous (AA) meetings and to develop positive relationships with appropriate support people. She was also required to apply for, obtain, and maintain suitable housing for herself and the children, as well as to seek and obtain employment. Further, she was required to attend and benefit from parenting classes, to consistently attend parenting-time visits, and to participate in individual counseling.

The record reveals that respondent-mother failed to make any significant progress on her case service plan, and failed to address the issues that led to adjudication. But respondent-mother argues that by the time of the termination hearing she had addressed the issues that led to adjudication, noting that she had begun cooperating with DHHS and had begun attending various classes, including NA or AA meetings, domestic violence classes, anger management classes, and Bible studies. Respondent-mother also argues that she was participating in drug screens and substance-abuse treatment, and that she would be employed but for her court-ordered inpatient substance-abuse treatment. We find these arguments to be without merit.

At the termination hearing, respondent-mother's caseworker reported that before her incarceration respondent-mother was inconsistent with services, missed the majority of her scheduled drug screens, and had multiple positive drug screens for methamphetamine. Respondent-mother was incarcerated in January 2018 on charges of the delivery or manufacture of methamphetamine, and was subsequently sentenced to 365 days in jail and inpatient substance-abuse treatment. The caseworker recognized that respondent-mother participated in some services while incarcerated; however, she noted that respondent-mother's first attempt at treatment in June of 2018 was unsuccessful, and that respondent-mother was required to serve the rest of her sentence in jail before beginning a different substance-abuse program in December 2018. Further, the caseworker indicated that although respondent-mother completed her psychological evaluation, she did not follow the evaluator's recommendations for "behavioral therapy and psychopharmacological evaluation."

Additionally, despite being provided information about housing assistance and low-income housing, respondent-mother never followed through to seek housing. Further, while she was referred to parenting classes, respondent-mother never attended them. Moreover,

respondent-mother failed to consistently attend visitations, and at the time of the termination hearing, she had not visited the children since July 2018.

Respondent-mother also argues that the trial court should have given her more time to complete her service plan, stating that the children were in foster care for less than two years, and that the children could have "easily" been returned to her care within six months of her completion of the inpatient treatment program. We disagree. As noted by the LGAL and the trial court, respondent-mother had developed a cycle or pattern involving substance abuse, incarceration, and CPS involvement; she had a history of complying with services only long enough to have the children returned to her care, at which point the cycle would begin anew. Additionally, the trial court noted that after 13 months, respondent-mother had only achieved 30 days in an inpatient treatment facility and had already been unsuccessful in a prior attempt.

In sum, although respondent-mother did minimally participate in some services, she had failed in more than 13 months since the children's removal to accomplish any meaningful change in the conditions that led to the court taking jurisdiction. *Williams*, 286 Mich App at 272. Given these circumstances, the trial court did not err by determining that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages. MCL 712A.19b(3)(c)(*i*). Because the trial court did not clearly err by finding that this ground for termination had been proven by clear and convincing evidence, we need not address its findings regarding other grounds for termination. *HRC*, 286 Mich App at 461.

## 2. RESPONDENT-FATHER (DOCKET NO. 347661)

Respondent-father does not challenge the trial court's findings concerning specific grounds for termination, but argues that the trial court erred by finding that DHHS had made reasonable efforts at reunification and therefore by terminating his parental rights. We disagree.

DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). Our Supreme Court has explained that " '[r]easonable efforts to reunify the child and the family must be made in *all* cases' except those involving aggravated circumstances . . . ." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), quoting MCL 712A.19a(2). Reasonable efforts begin with the creation of a case services plan aimed at rectifying the conditions that caused the child's removal. *Fried*, 266 Mich App at 542; see also MCL 712A.18f(3)(d) (stating that the service plan shall include a "[s]chedule of services to be provided to the parent . . . to facilitate the child's return to his or her home"). Thereafter, "[w]hile [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of the respondent[] to participate in the services that are offered" and to "demonstrate that [he or she] sufficiently benefited from the services provided." *Frey*, 297 Mich App at 248. To successfully claim a lack of reasonable efforts, a respondent must establish that he or she would have fared better if the petitioner offered other services. *Fried*, 266 Mich App at 543.

Respondent-father argues that DHHS did not make reasonable efforts to reunify him with the children because caseworkers only met with him once while he was incarcerated and did not know his whereabouts during much of the case. He further blames his inability to contact his

caseworkers on being incarcerated. Accordingly, he argues that he should have been given additional time upon his release to avail himself of services.

Respondent-father fails to explain why his repeated incarcerations and failure to communicate with his caseworkers constitutes a failure to provide reasonable reunification efforts. Moreover, he fails to address the fact that he did not communicate or participate in services even during those times that he was not incarcerated. As noted above, "[w]hile [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of the respondent[] to participate in the services that are offered" and "demonstrate that [he or she] sufficiently benefited from the services provided." *Frey*, 297 Mich App at 248. Respondent-father also fails to cite any supporting authority for the proposition that the caseworker's inability to locate him should be considered a failure to provide reasonable reunification efforts.

Respondent-father has also failed to establish that he would have fared better if DHHS had offered other services. *Fried*, 266 Mich App at 543. The record shows that respondent-father failed to participate in services even when he was not incarcerated. At the termination hearing, respondent-father acknowledged that he was visited by members of DHHS on at least two occasions and was aware that he could have contacted DHHS to inform them of his repeated incarcerations. Further, respondent-father admitted that he continued to use controlled substances during these proceedings. The record clearly establishes that DHHS continued to offer services and respondent-father failed to avail himself of those services. Accordingly, the trial court did not err by concluding that DHHS made reasonable efforts to preserve and reunify the family. *Id.* at 542-543.

Because DHHS made reasonable efforts at reunification and respondent-father does not otherwise challenge the trial court's finding that statutory grounds for termination were proven, we affirm the trial court's finding. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1999), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000).

## III. BEST-INTEREST DETERMINATION

Both respondents also challenge the trial court's finding that termination was in the children's best interests. We disagree.

## A. STANDARD OF REVIEW

We review for clear error the trial court's best-interest determination. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *BZ*, 264 Mich App at 296-297.

## B. ANALYSIS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Olive/Metts*, 297 Mich App at 40. When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90.

"The trial court should weigh all the evidence available to determine the children's best interests." *White*, 303 Mich App at 713. The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality . . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors that the trial court may consider include the advantages of a foster home over the parent's home, the parent's compliance with the service plan, the parent's visitation history, the child's well-being in the foster home, and the possibility of adoption. *White*, 303 Mich App at 713-714.

### 1. RESPONDENT-MOTHER (DOCKET NO. 347635)

Respondent-mother argues that the trial court erred by determining that termination of her parental rights was in the children's best interests because the trial court failed to consider her bond with the children. We disagree.

The parent-child bond is only one factor for the trial court to consider in making its best-interest determination. See *Olive/Metts*, 297 Mich App at 41. Further, respondent-mother's caseworker testified that respondent-mother's inconsistency in parenting-time visits and lack of commitment to services had caused severe strain to the parent-child bond, and that there had been minimal contact with the children and minimal progress made since the children's removal in September 2017. The caseworker described the parenting-time visits respondent-mother did attend as "chaotic." The caseworker further testified that the children were "in desperate need of permanency" and were finally getting caught up in school and having their needs met at their placements. While the caseworker recognized that respondent-mother's parenting-time visits had improved during her first attempt at inpatient substance-abuse treatment, she noted that the children's mental health deteriorated when respondent-mother returned to jail. Further, although respondent-mother argues that her parenting skills had improved over time, at the time of the termination hearing, respondent-mother had not seen the children in over five months. And although respondent-mother argues that she would be able to parent her children after successfully completing her current inpatient substance-abuse program, the trial court was not required to agree with her speculation, especially in light of her long history of substance abuse and relapse.

Respondent-mother also argues that the children would have permanence if returned to her rather than staying in foster care, noting that they had been in multiple placements and were not placed together. We do not dispute that the children do not live together currently. However, we fail to see how the pattern of substance abuse, instability, violence and neglect that the children experienced before their removal represented permanence. The trial court noted numerous instances in the past where the children were placed under the court's jurisdiction,

placed with family members, or removed. Additionally, the record shows that the children's caretakers ensured that the children were able to have monthly visits. The trial court can consider the advantages of a foster home over the parent's home, the child's well-being in the foster home, and the possibility of adoption. *White*, 303 Mich App at 713-714. In this case, it is clear that the foster homes could provide the children with a stable home, something that respondent-mother could not provide. Further, the trial court appropriately considered that the foster parents of JLW, IW, and AMW were willing to adopt the children placed with them. We conclude that the trial court did not clearly err by determining that termination of respondent-mother's parental rights was in the children's best interests.[4] *Olive/Metts*, 297 Mich App at 40.

## 2. RESPONDENT-FATHER (DOCKET NO. 347661)

Respondent-father argues that the trial court erred by concluding that termination of his parental rights to JLW, IW, and AMW was in their best interests because he was bonded with the children and they were happy to see him at parenting-time visits. He also repeats his argument that he should have been given more time after his incarceration to benefit from services. We disagree.

As stated previously, the parent-child bond is only one factor for the trial court to consider. See *Olive/Metts*, 297 Mich App at 41. Respondent-father's parenting-time attendance was sporadic; he missed 19 of his scheduled parenting-time visits before his parenting time was suspended because of inconsistency and the children's deteriorating mental health. Respondent-father failed to comply with his case service plan in any meaningful way, whether he was incarcerated or not. Despite a lengthy history of CPS involvement and several opportunities to remedy his issues, respondent-father failed to demonstrate a benefit from the services provided; in fact, the children came into care after respondent-father assaulted and threatened his live-in partner with a knife while the children were in the house. Meanwhile, the children were doing well in their pre-adoptive foster homes, where they had the opportunity to achieve permanency

---

[4] Respondent-mother also presents the cursory argument that her due-process rights were violated when DHHS created the conditions requiring her absence from the children's lives by requiring her to attend inpatient substance-abuse treatment and then sought to terminate her parental rights while she was in treatment. Respondent-mother failed to present this issue in her statement of questions presented. We are not required to address any issues not raised in the statement of questions presented. *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000); MCR 7.212(C)(5). Further, respondent-mother also fails to support her assertion with any meaningful argument or explanation regarding how DHHS violated her due-process rights. This Court is not required to unravel and elaborate on respondent's arguments. *People v Cameron*, 319 Mich App, 215, 232; 900 NW2d 658 (2017). Nonetheless, the record is clear that it was respondent's criminal actions that resulted in her court-ordered inpatient substance-abuse treatment and absence from parenting-time visits, and that respondent received proper notice and opportunity to be heard before these consequences were imposed. See *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014). Accordingly, we conclude that respondent-mother's argument is without merit.

and stability. We conclude that the trial court did not clearly err by finding that termination of respondent-father's parental rights to JLW, IW, and AMW was in the children's best interests. *Id.* at 40.

Affirmed.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra